IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

James Nicholas,                :

          Plaintiff         :     Civil Action 2:09-cv-308

     v.                     :     Judge Frost

Michael J. Astrue,         :     Magistrate Judge Abel
Commissioner of Social Security,
          Defendant      :

**REPORT AND RECOMMENDATION**

Plaintiff, James Nicholas brings this action under 42 U.S.C. §§405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security denying

his applications for Social Security Disability and Supplemental Security Income

benefits. This matter is before the Magistrate Judge for a report and recommendation

on the administrative record and the parties' merits briefs.

**Summary of Issues.** Plaintiff Nicholas maintains that he is disabled due to

Hepatitis C, asthma, high blood pressure, arthritis, an ulcer and obesity. (R. 31, 84.)

Plaintiff argues that the decision of the Commissioner denying benefits should be

reversed because:

- The administrative law judge failed to evaluate state agency examining
  physician Dr. Condon's January 2008 residual functional capacity opinions.

- The administrative law judge erroneously evaluated state agency examining
  psychologist Dr. Evans' July 2007 residual functional capacity opinions.

**Procedural History.** Plaintiff Nicholas filed his applications for disability

insurance benefits and supplemental security income on September 20, 2004, alleging

that he became disabled on December 24, 1999, at age 47. (R. 40-44, 330-31.) The

applications were denied initially and upon reconsideration. Plaintiff sought a *de novo*

hearing before an administrative law judge. On July 1, 2008, an administrative law

judge held a hearing at which plaintiff, represented by counsel, appeared and testified.

(R. 343-83.) A vocational expert also testified. (R. 386-99.) On July 25, 2008, the

administrative law judge issued a decision finding that Nicholas was not disabled

within the meaning of the Act. (R. 12-22.) On February 13, 2009, the Appeals Council

denied plaintiff's request for review and adopted the administrative law judge's

decision as the final decision of the Commissioner of Social Security. (R. 5-7.)

**Age, Education, and Work Experience.** Nicholas was born November 10, 1952.

(R. 40, 56.) He has a high school education. (R. 90.) Nicholas previously worked as an

assembler, carnival ride operator, cashier, janitor/maintenance, driver, bus operator, a

supervisor at an auto auction, cook and shoe salesman. (R. 62-69, 85-86.)

**Plaintiff's Testimony.** The administrative law judge fairly summarized

Nicholas' testimony as follows:

> At the hearing, the claimant testified that he resides in a one story house
> with a friend and her 33 year old daughter. He is supported by $162.00
> per month in food stamps, a $115.00 per month general relief payment, a
> medical card, and financial assistance from his friend. He maintains a
> valid driver's license and is able to drive without significant problems. He
> was able to drive himself to the hearing. He has a high school education
> obtained in special education classes from the fourth grade through the
> eighth grade. The claimant admitted that he has some difficulty reading,
> but he is able to do simple math. He testified that he dropped out of
> stenography/paralegal classes, which he attended after completing high
> school, because he could not keep up with the shorthand portion of the

stenography training. He is five feet two inches tall and he weighs 191 pounds. The claimant testified that he weighed this amount at the time he last worked. The claimant testified that he quit smoking cigarettes, drinking alcohol, and using the illegal substance of crack cocaine in August 2001, because he got tired of feeling bad.

The claimant identified his most significant problem as hepatitis C, associated with diffuse aching pain throughout his body. He testified that he experiences the most intense pain in his legs and shoulders. The claimant denied that he is prescribed any medication for hepatitis C. The claimant identified his next most significant problem as shortness of breath and difficulty breathing. The claimant testified that he sometimes has to sleep on three pillows at night secondary to his shortness of breath. He is medicated for difficulty with an inhaler, which he uses four times per day on an average day, and six times per day on a bad breathing day. The claimant identified his next most significant problem as depression. The claimant described his depressive symptoms as feeling down, wanting to be by himself, and as having problems with his memory. The claimant denied that he participates in any professional mental health treatment for this complaint. The claimant identified his next most significant problem as elevated blood sugar. He stated that he experiences side-effects from having elevated blood sugar, consisting of headaches and chills, which occur at the frequency of twice per month. The claimant testified that these side-effects persist until he consumes sugar, and that it typically takes 15 or 20 minutes for him to feel better.

The claimant described his daily activities as caring for his personal hygiene and grooming independently, taking ten to 15 minute walks, going fishing, attending church services, checking on the church to make sure that the doors are locked and everything is secure, and watching television. He stated that he is able to lift and carry four or five pounds and sit for 15 minutes at a time. He is able to vacuum half of a room at a time.

(R. 12-13.)

**Medical Evidence of Record.** The administrative law judge's decision fairly sets out the relevant medical evidence of record. This Report and Recommendation will only briefly summarize that evidence.

3

<u>The Columbus Neighborhood Health Center, Inc.</u>  The record reflects Nicholas received treatment for hypertension, hepatitis B and C,  abdominal pain and myalgias from March 2002 to March 2008.  (R. 152-214, 279-97.)  He tested positive for hepatitis B and C in March 2002. (R. 207-14.)

In February 2004, Nicholas' blood pressure was stable, but he began to complain of increasing arm and hand pain. (R. 183-84.)  Nicholas received his hepatitis C diagnosis in March 2004. (R. 57.)  By May 2004, Nicholas complained of pain all over his body and an increase in pain in his arms. (R. 184.)  In July 2004, he reported arm and hand pain, but his blood pressure "looks good" and it was noted that Nicholas was exercising.  (R. 175.)  In October 2004, Nicholas complained of chronic and "extreme" pain for which he received medication and shortness of breath. (R. 169, 170.)  His blood pressure was described as controlled.  (R. 170.)

In March 2005, Nicholas continued to complain of joint pain "all over" and reported that his medication was not working.  (R. 161.)  In June 2005, Nicholas' hepatitis was noted to be stable, although Nicholas had occasional nausea and continued to report joint pain with increasing activity.  (R. 295.)

In February 2006, Nicholas denied any shortness of breath, dizziness, or swelling. (R. 293.)  A laboratory report from March 2006 indicated a diagnosis of benign hypertension. (R. 323.)  Nicholas reported in May 2006, that he felt dizzy, had headaches, shortness of breath, coughing, and wheezing. (R. 290.)  In November 2006, he reported body pain and headaches,  but no shortness of breath, palpitations, or lower

extremity edema. (R. 289.)  The treatment notes reflect that Nicholas was prescribed medication.  *Id.*

Between April and August 2007, Nicholas was seen nine times with sporadic complaints of bilateral arm and hand numbness, shortness of breath, and intermittent chest pain. (R. 282-88.)  A radiological report dated July 11, 2007, indicated Nicholas' lumbar segment alignment was normal but noted moderate arteriosclerosis of the abdominal aorta and minimal degenerative changes of the lumbar spine. (R. 268.)

In February 2008, an ultrasound of Nicholas' abdomen demonstrated fatty infiltration of his liver, but no discrete masses.  (R. 278.)

Eric H. Kraut, M.D. Consulting physician, Dr. Kraut, saw Nicholas on August 26, 2004, for evaluation of polyclonal gammopathy with a medical history significant for hepatitis C.  Nicholas complained of diffuse aching without localized pain.  Dr. Kraut reported that Nicholas' social history was significant for intravenous drug use.  Nicholas' blood pressure was high at 140/88, otherwise his examination findings were normal. (R. 118-19.)  Laboratory testing revealed that his ALT (alanine aminotransferase, blood test used to detect liver injury) was elevated at 146 and that his AST (aspartate aminotransferase, blood test used to diagnose and monitor liver disease) was elevated at 122.  (R. 115-16, 120.)

On September 21, 2004, after evaluating Nicholas, Dr. Kraut concluded that his polyclonal gammopathy  "probably" was the result of hepatitis C.  He also said that Nicholas may have proteinuria (condition in which urine contains an abnormal amount

of protein), consistent with hypertensive early renal disease. (R 113-14.)

Barbara Laroque, M.D.  On November 10, 2004, Dr. Laroque, a specialist in internal medicine, completed a "Chronic Fatigue Residual Functional Capacity Questionnaire." (R. 122-27.)  Dr. Laroque reported she had treated Nicholas for three years, during which time he complained of fatigue and pain. (R. 122.)  Nicholas had self-reported short-term memory and concentration problems. (R. 123.) He was not a malingerer. When asked if emotional factors contributed to the severity of Nicholas' symptoms and functional limitations, Dr. Laroque replied in the affirmative. (R. 124.) She further found no physical evidence to substantiate Nicholas' complaints of chronic pain. (R. 125.) Dr. Laroque determined that Nicholas was capable of low stress jobs. *Id.* Dr. Laroque opined that Nicholas could sit for over two hours, stand for one hour at a time, and could sit for four hours and stand/walk for less than two hours total in an eight-hour day. (R. 125-26.)  Nicholas would need a sit/stand/walk at-will option and would need to take breaks from work every 45 minutes. (R. 126.)  Dr. Laroque also opined that Nicholas could lift 10 pounds occasionally and less than 10 pounds frequently, and could twist occasionally but stoop, crouch, climb ladders, and climb stairs rarely. *Id.*  Dr. Laroque concluded that Nicholas had no significant limitations with repetitive reaching, handling, or fingering. *Id.*

Ruth Purdy, D.O.  On November 29, 2004, Dr. Purdy examined Nicholas at the request of the state agency. (R. 132-39.)  Nicholas complained of body aching and pain, especially in his upper extremities , weight gain, fatigue, insomnia, and shortness of

breath.  Upon examination,  his blood pressure was 200/134, he had very poor dentition and his tonsils were atrophic.  His lungs had diminished breath sounds in the bases bilaterally and he coughed frequently throughout the examination.  He had gross edema throughout his abdomen, which was also noted to be firm.  He had limited range of motion of his dorsolumbar spine and marked restriction of range of motion of his hips.  (R. 134-39.) Dr. Purdy diagnosed Nicholas with a history of recent hepatitis C with multiple joints pains, a weight change generalized, but especially abdominal ascites and hypertension.  Dr. Purdy concluded that Nicholas was in pain during the examination and felt his "physical activities are definitely impaired in respect to sitting, walking, lifting, carrying, handling objects, etc." (R. 135.)

Pulmonary function testing.  On December 29, 2004, consultative pulmonary function testing of Nicholas revealed that his forced vital capacity (FVC) was 1.94 pre bronchodilator administration (72% of the amount predicted) and 2.41 post bronchodilator administration (89% of the amount predicted.)  His forced expiratory volume after one second (FEV1) was 1.36 pre bronchodilator administration (61% of the amount predicted) and 1.86 post bronchodilator administration (84% of the amount predicted.)  His percentage of FEVl/FVC was 83% pre bronchodilator administration and 93% post bronchodilator administration.  It was determined that Nicholas had mild pulmonary obstruction without medication but was normal with medication. (R. 142-43.)

<u>Augusto Pangalangan, M.D.</u> On February 15, 2005, Dr. Pangalangan, a state agency reviewing physician, opined that Nicholas could lift 20 pounds occasionally and 10 pounds frequently; could stand, walk, and sit for six hours in an eight-hour day; and otherwise had unlimited push/pull ability. (R. 215-16.) Dr. Pangalangan restricted Nicholas to occasional climbing of ramps, stairs, ladders, ropes, and scaffolds. (R. 217.) Nicholas should also avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (R. 218-19.) He concluded that while Nicholas' symptoms were due to medically determinable impairments and their severity and duration were reasonable, Nicholas' allegations and functional limitations were only partially supported by the medical evidence. (R. 220.)

<u>Lynne Torello, Ph.D., M.D., F.A.B.F.M.</u> Records from Behavior Science Specialists, LLC for the period July 11-24, 2007 contain Franklin County Department of Job and Family Services Disability Evaluation Forms Executed by Dr. Torello and Dr. Michele Evans. After examining Nicholas, Dr. Torello reported on July 11, 2007, that Nicholas' impairments did not affect his ability to stand, walk, or sit. Dr. Torello also reported that Nicholas could lift 6 to 10 pounds frequently and up to 20 pounds occasionally, and was moderately limited in his ability to bend. Dr. Torello further reported that Nicholas had normal bilateral range of motion in all areas except his back, and full bilateral strength. She concluded Nicholas was employable. (R. 259-62.)

<u>Michele Evans, Ph.D.</u> On July 24, 2007, Nicholas was evaluated by Dr. Evans, on referral from the local county Department of Job & Family Services. (R. 245-58.)

Nicholas reported that he was depressed with a loss of interest in activities; feelings of hopelessness, helplessness, and guilt; insomnia; diminished appetite with loss in weight; feelings of worthlessness; problems thinking and concentrating; fatigue; and diminished energy. (R. 248.) A mental status examination revealed that Nicholas' affect was flat. *Id.* He was alert and fully oriented with clear and coherent thoughts. *Id.* On the Wechsler Individual Achievement Test Second Edition-Abbreviated (WIAT-II), Nicholas obtained a word reading standard score of 88 (eighth grade equivalent), a numerical operations standard score of 87 (fifth grade equivalent), a spelling standard score of 97 (eighth grade equivalent), and a composite standard score of 87. (R. 248.) The Wechsler Adult Intelligence Scale-III (WAIS-III) revealed a verbal IQ of 70, performance IQ of 70, and full scale IQ of 67. (R. 250.) The Wechsler Memory Scale-III (WMS-III) resulted in a general memory score of 70 (borderline level) and a working memory score of 91 (average level.) (R. 252.) Dr. Evans diagnosed Nicholas with a major depressive disorder, recurrent and moderate; alcohol dependence, in sustained full remission; cocaine dependence, in sustained full remission; marijuana dependence, in sustained full remission; and borderline intellectual functioning. (R. 256.) Dr. Evans assigned a Global Assessment of Functioning (GAF) as 49. (R. 257.) Dr. Evans concluded that Nicholas was unemployable, but expected his mental functional impairments to last only 9 to 11 months, provided he received treatment. (R. 263-64.)

John Condon, M.D. On January 9, 2008, Dr. Condon performed a disability examination of Nicholas at the request of the state agency. (R. 223-26.) Dr. Condon

reported that Nicholas' blood pressure was high; a chest exam revealed an occasional "crackle," but otherwise Nicholas' breathing sounds were clear; and a pulmonary study showed a normal spirometry. (R. 225.)

On clinical examination, Dr. Condon found that Nicholas had a diminished range of motion in the lumbar spine with "a lot of paralumbar tenderness but not much myospasm." (R. 225.) Plaintiff complained of pain and tenderness in all muscle groups and around all the major joints, but he noted no joint deformities and no evidence of effusion. (R. 225-26.) There were no neurological deficits. (R. 225.) Dr. Condon noted Nicholas showed "disturbance" of range of motion of his spine. However, he also noted that "his other joints showed a very acceptable range of motion" and had "good strength" in both upper and lower extremities. (R. 226.) Nicholas could flex his dorsolumbar spine 80 degrees, extend 20 degrees, and perform lateral flexion 15 degrees, bilaterally. (R. 229.) Dr. Condon further noted that Nicholas' asthma was well-controlled by medication. *Id.*

Dr. Condon also completed a "Medical Source Statement of Ability To Do Work-Related Activities." (R. 238-44.) Dr. Condon opined that Nicholas could lift/carry 10 pounds frequently and 20 pounds occasionally; could sit for two hours at a time, stand for 30 minutes at a time, and walk for 15 minutes at a time; could sit for a total of eight hours in an eight-hour day and stand/walk for a total of two hours in an eight-hour day; could reach, reach overhead, and push/pull frequently; and could handle, finger, and feel continuously. (R. 238-40.) Nicholas could climb stairs and ramps, stoop, kneel,

crouch, and crawl occasionally, but could never balance or climb ladders or scaffolds.

(R. 241.)

**Administrative Law Judge's Findings.**  The administrative law judge found that:

1.  The claimant met the disability insured status requirements of the Social Security Act on December 24, 1999, the date he stated he became unable to work, and continues to meet them through the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since December 24, 1999.

3.  The medical evidence establishes that the claimant has "severe" impairments best described as (1) hypertension, and (2) hepatitis C, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4.  The claimant's testimony regarding his limitations is credible to the extent that he has severe impairments.  However, for the reasons stated in the body of this decision, the claimant's testimony is not credible to show that he is incapable of all work activity at any exertional level.

5.  The claimant has the residual functional capacity to lift and carry ten pounds frequently and 20 pounds occasionally, stand and/or walk (with normal breaks) for six hours total, and sit (with normal breaks) for six hours total in an eight hour work day.  The claimant can occasionally climb ramps and stairs, but he is precluded from climbing ladders, ropes, and scaffolding.  He is precluded from working in environments involving concentrated exposure to respiratory irritants, such as dust, fumes, odors, and gases.  The claimant retains the mental residual functional capacity for the simple routine and repetitive tasks of one, two, and three steps (20 CFR §§ 404.1545 and 416.945).

6.  The claimant's past relevant work as a driver, janitor, and sorter did not require the performance of work-related activities precluded by the above limitations (20 CFR §§ 404.1565 and 416.965).

7.  The claimant's impairments do not prevent him from performing his past relevant work as a driver, janitor, and sorter.

8. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision (20 CFR § §404.1520(f) and 416.920 (f)).

(R. 21.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence,

12

the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

Even when there is substantial evidence supporting a finding of disability the Court must affirm the Commissioner's decision when it, too, is supported by substantial

evidence. There is "'a zone of choice within which the decision makers can go either way, without interference by the courts.'" *Mullen v. Secretary of Health and Human Services*, 800 F.2d 535, 548 (6th Cir. 1986)(*en banc*)(citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). The administrative law judge, not the Court, is the trier of fact. *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987).

In close cases where there are facts supporting both the plaintiff's and the Commissioner's view of the evidence, the Commissioner's decision must be affirmed. *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996). It is not the Court's role to resolve conflicts in the evidence or to determine the credibility of the claimant. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). The decision of the Commissioner must be affirmed so long as it is consistent with the requirements of the law and is supported by substantial evidence.

**Plaintiff's Arguments.** Nicholas argues that the decision of the Commissioner

denying benefits should be reversed because:

- The administrative law judge failed to evaluate state agency examining physician, Dr. Condon's January 2008 residual functional capacity opinions. (Doc. 10 at 4.)  Plaintiff argues that Dr. Condon reported that Nicholas was more limited than the administrative law judge recognized. *Id.*  Plaintiff contends the administrative law judge utterly failed to evaluate Dr. Condon's opinions that he was more limited than the administrative law judge found. (*Id.* at 7.)  Plaintiff also contents the Commissioner's post hoc rationalizations are improper. *Id.*

- The administrative law judge erroneously evaluated state agency examining psychologist Dr. Evans' July 2007 residual functional capacity opinions. (Doc. 10 at 9.)  Plaintiff argues the administrative law judge erred by finding that Nicholas did not have a "severe" mental impairment. (*Id.* at 10.)  Plaintiff also argues that Dr. Evans diagnosed borderline intellectual functioning and that borderline intellectual functioning alone is a "severe" mental impairment. (*Id.* at 10 and 11.)  Finally, Plaintiff contends the administrative law judge erroneously found that Nicholas' borderline intellectual functioning and attendant limitations would not last for twelve consecutive months. (*Id.* at 11.)

**Analysis.**

Nicholas has not demonstrated that the administrative law judge applied incorrect standards of law when evaluating the medical source opinions.  *See* Doc. 10 at

4-12; Doc. 15 at 2-6.  He argues that the administrative law judge's decision is not supported by substantial evidence because his residual functional capacity assessment is undermined by the opinions of a disability examining physician, Dr. Condon, and a disability examining psychologist, Dr. Evans, whose opinions clearly support a finding of disability. Both Condon and Evans examined Nicholas once to make a disability evaluation. Dr. Condon was not a treating physicians, and Dr. Evans was not a treating psychologist.

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  Social Security Ruling 96-6p, 1996 WL 374180 at *2.  Yet the Regulations do not permit an administrative law judge to automatically accept (or reject) the opinions of a non-treating medical source.  *See id*. at *2-*3.  The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."  20 C.F.R. §§ 404.1527(b), 416.927(b).   To fulfill this promise, the Regulations require administrative law judges to evaluate non-treating medical source opinions under the factors set forth in 20 C.F.R. §§ 404.1527(d), 416.927(d)  including, at a minium, the factors of supportability, consistency, and specialization.  *See* 20 C.F.R. §§ 404.1527(f), 416.927(f); *see also* Ruling 96-6p at *2-*3.

**Dr. Condon.**  Plaintiff asserts that the administrative law judge failed to directly address Dr. Condon's opinion on residual functional capacity. He argues that it is

inconsistent with the administrative law judge's residual functional capacity findings. As plaintiff argues, there are differences in the two residual functional capacity findings regarding standing, walking, reaching and environmental restrictions. Both residual functional capacity assessments would permit light work (lifting up to 20 pounds occasionally and up to 10 frequently), but the administrative law judge's would permit a broader range of light work than Dr. Condon's

Standing: The administrative law judge found that Nicholas could stand and/or walk for a total of six hours in an eight-hour workday, while Dr. Condon limited him to a total of only four hours per workday. (R 21 and 239.) The administrative law judge found that Nicholas could stand and/or walk with "normal breaks," which is consisten with light work, but  Dr. Condon found that Nicholas could stand for only thirty minutes at a time. (R. 21.and 239.)

Walking. The administrative law judge found that Nicholas could stand and/or walk with "normal breaks." (R. 21.) In contract, Dr. Condon found that he could walk for only fifteen minutes at a time. (R. 239.)

Reaching, stooping: The administrative law judge did not limit plaintiff's ability to reach, while Dr. Condon stated that Nicholas could reach frequently. (R. 21 and 240.) The administrative law judge did not limit Nicholas's ability to stoop, while Dr. Condon maintained that Nicholas could stoop only occasionally. (R. 21 and 241.)

Environmental restrictions: The administrative law judge  found that Nicholas needed to avoid "concentrated exposure to respiratory irritants, such as dust, fumes,

odors, and gase," while Dr. Condon prohibited all exposure to respiratory irritants and other environmental conditions. (R. 21 and 242.)

The administrative law judge fairly set out Dr. Condon's findings on clinical examination (R. 14-15), but he did not set out his residual functional capacity findings. Contrary to Nicholas' contentions, however, the administrative law judge provided sufficient information to show that he weighed Dr. Condon's medical findings and the limitations based on these findings as required by the Regulations required.

First, the Court notes an administrative law judge is not required to discuss every piece of evidence in the record. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir. 1989); *See* also, *Thacker v. Commissioner of Social Security,* No. 02-6138, 2004 WL 1153680 at *3 (6th Cir. May 21, 2004). The question is, of course, whether the Commissioner's decision is supported by substantial evidence on the record as a whole. *See Perales,* 402 U.S. at 401. While the administrative law judge did not specifically cite his reasons for not giving much weight to Dr. Condon's opinion, he did cite Dr. Condon's report of the disability examination in his summary of the evidence. *See* R. 14-15. In addition, the administrative law judge specifically noted during the administrative hearing that there were no objective findings to support Dr. Condon's opinion that Nicholas's pain was disabling. (R. 373 and 384-86.)

Thus the administrative law judge adequately explained his reasons for not making more restrictive residual functional capacity findings. Further, there is substantial evidence supporting those findings.

17

The administrative law judge's residual functional capacity findings largely mirror those made by Dr. Pangalangan (R. 215-22), but includes additional limitations for simple, repetitive work in recognition of the mild limitations resulting from Nicholas's mental impairments and also provides that he should not climb ladders and scaffolds. He expressly stated that his residual functional capacity finding "is consistent with the opinions of Dr. Pangalangan (Exhibit 9F) and Dr. Torello (Exhibit 11F, page 16)." (R. 16). The administrative law judge acknowledged other evidence suggested a more limited residual functional capacity, and he explained why he did not adopt those further limitations. For example, he rejected Dr. Laroque's opinion because she relied too heavily on plaintiff's subjective reports of symptoms and limitations and too uncritically accepted most of his complaints. (R. 17).

The administrative law judge further supported his residual functional capacity findings by expressing reservations about Nicholas's credibility. He found that "the objective evidence does not confirm the severity of the alleged pain and other functional restrictions arising from the claimant's documented condition." (R. 19). The administrative law judge found that Nicholas exaggerated his complaints (R. 20). For example, the administrative law judge said that the record is devoid of any evidence that plaintiff experienced any end-organ changes resulting from hepatitis or diabetes (R. 18-19). He also noted that despite Nicholas's testimony about breathing difficulties, medical records indicated his lungs were primarily clear and pulmonary function testing revealed at worst only mild pre-medication obstructions (R. 19). Similarly, the

administrative law judge noted that although plaintiff testified to symptoms stemming from diabetes, the objective evidence indicated Nicholas's blood glucose level was only minimally elevated. (R. 19).

The administrative law judge is the finder of fact. He gave a reasoned explanation for his residual functional capacity findings; and there is nothing in Dr. Condon's report that required him to find that Nicholas can perform only a more restricted range of light work. Dr. Condon acknowledged that a pulmonary function study was normal. On examination, Nicholas's breath sounds were clear (R. 225, 231 and 235-37). The clinical examination of Nicholas's back yielded few supporting findings. There were minor limitations in range of motion of his lumbar spine, and the range of motion in all other joints was normal. (R. 228-30.) Manual muscle testing was normal. (R. 227.)

Based on the residual functional capacity found by the administrative law judge, the vocational expert testified during the administrative hearing that Nicholas would be capable of performing his past relevant work as a driver and sorter, both as customarily performed and as Nicholas performed the jobs; and as a janitor, as Nicholas performed the job. *See* R. 387-99. Such testimony, in light of the evidence of record, constitutes reasonable support for the administrative law judge's non-disability decision.

**Dr. Evans.** Dr. Evans performed a one-time disability evaluation. When she saw Nicholas, he said that he was depressed. Dr. Evans diagnosed recurrent, moderate depression for which he needed treatment. She believed his symptoms would last 9-11

months. (R. 263-64.)

There is no evidence that Nicholas sought therapy or was treated by a psychiatrist or psychologist. Since the impairment was not expected to last for a continuous period of at least 12 months, it is not considered disabling. 20 C.F.R. §§ 404.1509, 416.909.

Plaintiff contends the administrative law judge failed to acknowledge that he must receive treatment before he would improve. Whether Nicholas receives treatments does not change how the administrative law judge must weigh Dr. Evans' opinion.

Substantial evidence supports the administrative law judge's determination that plaintiff Nicholas was no more than mildly limited as a result of any mental impairment. Nicholas testified that he graduated from high school, and after the eighth grade was no longer placed in special education classes. (R. 369.) He also testified that he successfully held a series of jobs until his alleged disability onset date, including a two-and-a-half year full-time position with the Salvation Army and three years with the Columbus Fair Auto Auction – two years of which he worked as a supervisor. (R. 348-54.) His Work History Report states that from 1979 to 1991 he worked as a bus operator. (R. 62.) At the time of the hearing, Nicholas served as a church deacon, read, did simple math, and enjoyed activities such as fishing. (R. 363-64, 369 and 378-79.) As defendant argues, nothing in the record suggests Nicholas's mental abilities prevent him from working.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R. Abel
United States Magistrate Judge